1  Surisa Rivers (SBN 250868)
   Caroleen Torossian (SBN 334792)
2  RIVERS LAW, INC., APC
   2600 Foothill Blvd., Suite 203
3  La Crescenta, CA 91214
   Phone: (818) 330-7012
4  Fax: (213) 402-6077
   surisa@riverslawinc.com
5  caroleen@riverslawinc.com

6  David W. German (SBN 252394)
   VANAMAN GERMAN LLP
7  14001 Ventura Blvd.
   Sherman Oaks, CA 91423
8  Phone: (818) 990-7722
   Fax: (818) 501-1306
9  Dgerman@vanamangerman.com

10  Attorneys for Plaintiff

11

12                **UNITED STATES DISTRICT COURT**

13                **CENTRAL DISTRICT OF CALIFORNIA**

14

15

16  N.D, a minor, by and through his          )   Case No.:  2:21-cv-6356
    guardian ad litem, F.A.,                  )
17                                            )   **Complaint For Damages For**
                                              )   **Violations of:**
18                                            )   1. **Americans With Disabilities**
                                              )      **Act, 42 U.S.C. § 12101, *et seq*.;**
19                 Plaintiff,                 )   2. **Section 504 of the Rehabilitation**
                                              )      **Act, 29 U.S.C. § 794, *et seq*.;**
20           v.                               )   3. **Unruh Civil Rights Act, Cal.**
                                              )      **Civ. Code § 51, *et seq*.;**
21  ANTELOPE VALLEY UNION HIGH                )   4. **Cal. Educ. Code §§ 200, 201, 220**
22  SCHOOL DISTRICT; DAVID J.                 )      **and 262.4;**
    VIERRA, Superintendent, in his official  )   5. **Negligence; and**
23  capacity; and DOES 1 TO 10, inclusive.    )   6. **Negligent Supervision**
                                              )
24                 Defendants.                )
    _                                         )
25                                            )
                                              )   **Demand for Jury Trial**
26  __
27  _____

28

## <u>JURISDICTION AND VENUE</u>

1.     The first two claims alleged herein arise under the Americans with Disabilities Act (42 U.S.C. §§ 12131 *et seq*.) ("ADA"), and Section 504 of the Rehabilitation Act of 1973 (29 U.S.C. §794 *et seq*.) ("Section 504"), such that the jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. Through the same actions and omissions that form the basis of Plaintiff's federal claims, Defendant has also violated Plaintiff's rights under state law, over which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2.     Jurisdiction and venue are proper under 20 U.S.C. § 1391(b) because the Antelope Valley Union High School District ("the District" or "Defendant") is located within Los Angeles County and all the acts and/or omissions giving rise to the claims in this action occurred in Los Angeles County, which is located within the geographical boundaries of the judicial district for the United States District Court for the Central District of California.

## <u>PARTIES</u>

3.     Plaintiff N.D ("Plaintiff" or "N.D.") is currently sixteen years old and resides in Lancaster, California, which is located within Los Angeles County. Plaintiff is a qualified individual with a disability within the meaning of the ADA, Section 504, the Unruh Civil Rights Act and all other nondiscrimination statutes.

4.     The District is a public school district organized and existing under the laws of the State of California, located within Los Angeles County. At all times relevant herein, Defendant was responsible for providing Plaintiff with full and equal access to its public education programs and activities incompliance with the requirement of state and federal law. Defendant receives both state and federal financial assistance.

5.     DAVID J. VIERRA is the Superintendent of Antelope Valley Union High School District and is sued herein in his official capacity. Mr. Vierra is responsible for establishing the policies and procedures within the district, and for oversight of the district personnel.

COMPLAINT

6.      Plaintiff is ignorant of the true names of the defendants named herein as DOES 1 through 10, inclusive, and therefore sue said defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege the true names and capacities of said defendants when they have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that DOES 1 through 10, inclusive, have or claim to have an interest in the controversy at issue in this Complaint and/or need to be joined to this action to give effect to the relief sought herein.

## FACTS APPLICABLE TO ALL CLAIMS

7.      Plaintiff is a sixteen-year-old bright, young man who has been clinically diagnosed with sickle cell anemia, asthma and sleep apnea. Plaintiff suffers from severe symptoms of all diagnoses, such as chronic fatigue, episodes of extreme pain, and intense migraine headaches.

8.      During his elementary school years, Plaintiff was an engaged and bright student. He excelled in his academics and enjoyed school. Since these earlier years, Plaintiff's medical diagnoses have affected his ability to go to school, learn, read, concentrate, complete assignments, walk, breathe, eat, bend and see.

9.      At the end of Plaintiff's fifth-grade year, on June 8, 2015, per Plaintiff's mother's request, Plaintiff was given a 504 plan. Plaintiff's initial 504 plan offered Plaintiff accommodations, including an extra set of books, work packets when he missed an extended amount of school, a modified schedule on days he felt ill, and the ability for Plaintiff to use the bathroom/drink water as needed. This 504 plan was modified on September 21, 2015 to include that Plaintiff would be provided with notes on the days he was ill and created a system for notifying all of Plaintiff's teachers of his illness.

10.      Plaintiff's educational records reflect numerous absences due to his sickle cell anemia, asthma and sleep apnea, which prevented him from accessing his education. For example, Plaintiff had missed 20 school days in the fifth grade, 17 school days in the second semester of his sixth grade, 37 school days in the eighth grade, and 43 school days

in the ninth grade. Aside from the numerous absences, Plaintiff was tardy or had to be dismissed early from school due to his disability.

11.     During the eighth grade, Plaintiff's symptoms increased, and he began to have frequent and intense migraine headaches and chronic pain. Plaintiff missed 37 school days and was tardy and/or dismissed early numerous times due to his disabilities. Due to his high number of absences, Plaintiff had to make up a high number of assignments while continuing to complete new assignments, which triggered his migraine headaches and chronic pain. Despite his change in needs, he was not offered reasonable accommodations to allow him equal access his education. Consequently, Plaintiff's grades significantly declined, and he experienced sadness, frustration, and anxiety relating to his inability to access his education because of his disabilities.

12.     After completing the eighth grade, Plaintiff enrolled within Antelope Valley Union High School District, which is the School District operating all public high schools located in Lancaster.

13.     At the time of Plaintiff's enrollment, Defendant was on notice regarding his disability and the impact it had on his ability to attend school and access his education.

14.     During his ninth-grade year (2018-2019 SY), Plaintiff's disabilities continued to significantly impact his ability to access his education and caused him to miss 258 periods, which equates to 43 full school days.

15.     Plaintiff again fell behind in many of his classes and was at risk of failing algebra, biology, introduction to engineering, English, and Mandarin. Again, Plaintiff was put in a position where he had to make-up a lot of his missed assignments, causing him severe anxiety and triggering his pain and migraines.

16.     Without reasonable accommodations and modification from the District, Plaintiff experienced the same disability-related cycle he experienced in the eighth grade: becoming ill, missing school, stressing about school because he fell behind, making up work while keeping up with new assignments, then falling ill again. As such, Plaintiff became depressed and anxious, and suffered severe emotional distress.

17.     As the problems continued, Plaintiff's mother contacted numerous teachers and administrative staff to help her son. She had a meeting with Mr. Sam Poon, who was Plaintiff's Mandarin teacher for 9th and 10th grades. Mom met with Mr. Poon 2-3 times asking him for more support and where to get notes of the class from because he was falling behind and was not learning a lot of the material.

18.     In addition, mom met with Ms. Jennifer Krause, who was Plaintiff's 9th grade Algebra I teacher. Plaintiff would miss her tests often due to his absences and he would have to make them up without learning the material. Ms. Krause refused to give the accommodations in Plaintiff's 504 plan (e.g. allowing him extra time, allowing him to get water or put his head down when experiencing a headache or other painful symptom relating to Sickle Cell Anemia.

19.     Plaintiff's mother met with Mr. Joshua Speaks, Plaintiff's 9th and 11th grade English teacher. Mr. Speaks was supportive of Plaintiff and tried to advocate for Plaintiff with other teachers. Mr. Speaks reached out to Plaintiff's mother with concern about Plaintiff and helped initiate a 504 meeting where he offered to help designed a system for Plaintiff to stream into classes. However, District administration refused to allow Plaintiff receive this accommodation recommended by his teacher.

20.     Mr. Joshua Warren was Plaintiff's History teacher also tried to help Plaintiff. For example, Mr. Warren put lessons on YouTube for Plaintiff to learn and also offered to set up streaming with the school. Again, the District refused to allow Plaintiff to receive the accommodation recommended by Mr. Warren.

21.     During his ninth grade year, Plaintiff's mother also contacted school administrators and other school staff to obtain help for her son. For example, she spoke to Ms. Jacquelyn Jones, a District school psychologist, and asked her if Plaintiff should receive an individual education plan (IEP). Ms. Jones discouraged Plaintiff's mother from pursuing an IEP, stating that Plaintiff would have to attend class with slow students, Plaintiff was too smart for an IEP, Plaintiff's peers would make fun of him if he had an IEP, it would look bad for college, an evaluation would cause Plaintiff to fall behind

because of being pulled out for testing, and that Plaintiff would not qualify. In addition, other school employees who attended his 504 meeting during the ninth grade insisted that Plaintiff needed a 504 plan and not an IEP.

22.     Plaintiff's mother contacted the Vice Principal, Ms. Deborah Keys, regarding Plaintiff's accommodations numerous times by meeting, phone calls and emails. Ms. Keys agreed to take the responsibility of making sure that Plaintiff's accommodations were followed. However, Ms. Keys failed to take any action relating to the enforcement of his 504 accommodations even when she knew teachers were not complying with his 504 plan.

23.     On April 9, 2019, a parent meeting was held with Dr. Cobb (school counselor), Mrs. Kastner (teacher), Debi Keys (Vice Principal), Marco Reyes (teacher), Mr. Poon (teacher), Mr. Speaks (teacher),  and Ms. Krause (teacher) to discuss Plaintiff's grades. At this time, Plaintiff had 4 failing grades and two D's. Plaintiff's mother expressed concern that he was absent due to his medical condition and that he would continue to be absent because his condition was not getting any better. The District did not offer any other accommodations or modifications (such as reduced workload or online streaming of classes) to allow Plaintiff to access his education. Instead, the meeting was adjourned without a plan in place.

24.     Without the needed accommodations and modifications, could not access his education for the rest of the ninth grade, receiving D's in all of his academic subjects at the end of the school year.

25.     On June 3, 2019, Plaintiff's mother dropped off a letter at school requesting an evaluation.

26.     On June 6, 2019, Plaintiff's mother spoke with Ms. Keys to discuss her concerns of Plaintiff taking finals.

27.     On September 27, 2019, Plaintiff's mother called and requested information about Virtual Academy and Independent Study.

28.     Nevertheless, Plaintiff's 504 Plan remained unchanged, and Defendant continued in its failure to offer appropriate accommodations to allow Plaintiff equal access to his education.

29.     In the beginning of tenth grade, Plaintiff's disability continued to interfere with his ability to access his education. On August 27, 2019, Plaintiff's 504 plan team met. Plaintiff's mother again expressed her concerns regarding Plaintiff's difficulties accessing his education in high school without reasonable accommodations. During the meeting, Plaintiff's mother requested for Plaintiff to have some of his classes streamed online through a video conferencing platform to address his difficulties attending school and missing assignments, which would alleviate a lot of Plaintiff's stress, anxiety, and depression. Defendant denied her request; did not offer any other reasonable accommodations to address her concerns; and offered the same 504 plan he had been receiving since the fifth grade.

30.     Plaintiff's 504 plan team met again on September 12, 2019. At this meeting, Plaintiff's mother requested for Plaintiff to be put on an independent study program on a short-term basis to allow Plaintiff to catch up on missed work. Defendant denied this request and left Plaintiff's 504 plan unchanged.

31.     Plaintiff's disability continued to keep him from accessing his education. Once again, the District failed to offer him any reasonable accommodations to access his education. As such, Plaintiff's first quarter progress report included failing grades ("Fs") in World History, Geometry, English, and Chemistry.

32.     Defendant also penalized Plaintiff for his disability related absences by assigning him Saturday school every Saturday between October 5, 2019 and November 2, 2019.

33.     Plaintiff was also asked to stay after school and work through his lunch in order to catch up on assignments.

34.     On October 14, 2019, Plaintiff's doctor from Children's Hospital Los Angeles wrote to Defendant recommending that Plaintiff be placed on home-hospital

instruction ("HHI") due to his ongoing, worsening medical complications. Plaintiff was then placed on HHI for the remainder of the semester.

35.     While on HHI, Plaintiff received homebound teaching services, but continued to lack access to materials and assignments necessary to keep up with his classes.

36.     During the second semester of tenth grade, Plaintiff transitioned to distance learning. During the transition, Plaintiff was marked absent 28 days between January 15, 2020 and April 4, 2020. This caused Plaintiff to fall behind even more with his schoolwork. Plaintiff contemplated suicide and seriously considered dropping out of school due to the anxiety and depression caused by the District's refusal to provide him reasonable accommodations. As a result, Plaintiff could not participate in distance learning between April 4, 2020 through the end of the school year and received no credit for his second semester of his tenth-grade year.

37.     Plaintiff started his eleventh-grade year through distance learning. The District held a 504-meeting regarding Plaintiff on September 9, 2020. Similar to previous years, the District refused to update his 504 plan with the reasonable accommodations he required to access his education. Without any other options, Plaintiff's parent was left with the choice between allowing Plaintiff to continue to suffering physically and emotionally at school (and likely failing his classes again) or placing him in an independent study program, which also did not meet his educational needs.

38.     In an effort to protect her son's health, Plaintiff parent opted the inadequate independent study program.

39.     On or about October 8, 2020, Plaintiff's doctors provided the necessary documentation for Plaintiff to be placed in independent study, which helped prevent Plaintiff from failing all of his classes. However, Plaintiff was denied the same opportunities offered to students attending regular school, such as teacher instruction.

40.     Without any teacher instruction or supports, Plaintiff could not keep up with the self-guided nature of the independent study program. Thus, he was placed back in the HHI program on November 24, 2020.

41.     Defendant continued in its failure to offer Plaintiff appropriate accommodations to allow Plaintiff equal access to the educational program offered by the District.

42.     In February 2021, with the assistance of his attorney, Plaintiff finally received an evaluation by the District relating to his disability-related educational needs. Based on its evaluation, Defendant determined that Plaintiff required additional modification, accommodations, and specially designed instruction to access his education. Accordingly, Defendant finally offered Plaintiff the reasonable accommodations and modifications he required to equally access his education in or about February 22, 2021.

43.     As described above, Plaintiff suffered severe emotional distress, depression, anxiety, hardship, and pain as a result of the Defendant's blatant failure to provide reasonable accommodations and modifications he required which denied him access to his education.

**Plaintiff's Compliance with California Tort Claims Requirement**

44.     On December 14, 2020, Plaintiff sent a Claim for Damages to the District ("Tort Claim Letter"), notifying the District of claims that are now set forth herein. Plaintiff's claim indicated that the claim was timely as to all events under the doctrine of continuing violations.

45.     To date, the District has not responded to Plaintiff's Tort Claim Letter.

46.     Plaintiff has thus complied with the requirements of Government Code Section 910, *et seq.*

## FIRST CLAIM

**AMERICANS WITH DISABILITIES ACT, DISCRIMINATION**

**42 U.S.C. §12131, *et seq.***

**Against the District and DOES 1-10**

47.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

48.    Congress enacted the ADA upon finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem."  42 U.S.C. § 12101(a) (2).

49.    In response to these findings, Congress explicitly stated that the purpose of the ADA is to provide "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."  42 U.S.C. § 12101(b) (1)-(2).

50.    Title II of the ADA provides in pertinent part: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

51.    Pursuant to Title II, public entities are required to provide meaningful access to their programs, services and activities. Among the requirements to provide meaningful access, public entities must modify their policies and procedures when necessary, to accommodate disability related needs, also known as "reasonable accommodation." 28 C.F.R. §35.130(b)(7). Public entities cannot provide programs, services or benefits to a person with a disability that are not equal to those provided to others or deny a person with a disability the opportunity to participate in programs, services or activities. 28 C.F.R. §35.130(b)(1)(iii). Moreover, public entities are required to administer their programs, services and activities in the most integrated setting appropriate. *Id.* at §35.130(d).

52.    At all times relevant to this action, the District is a "public entity" within the meaning of Title II of the ADA and provides a program, service or activity to the general public.

53.    At all times relevant, including at the time of each alleged violation of the ADA, Plaintiff was a qualified individual with a disability within the meaning of the ADA, or was regarding as having a disability. Plaintiff's sickle cell anemia, sleep apnea, and asthma, substantially limits a variety of major life activities, including but not limited to, talking, learning, concentrating, among others.

54.    At all times relevant, including at the time of each alleged violation of the ADA, the District provided services, programs and activities in its public schools, and was obligated to provide Plaintiff with reasonable accommodations that he needed in order to enjoy meaningful access to the benefits of a public education, and otherwise not exclude him from its educational program.

55.    The district acted in violation of Title II of the Americans with Disabilities Act through failing to provide a full and meaningful educational program, including by its failure to provide reasonable accommodations and supports for Plaintiff's disabilities.

56.    Accordingly, the District has violated Title II of the Americans with Disabilities Act, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

57.    As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education from his ninth grade year and continuing for school year to school year until February 2021. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to the District's educational programs, including lost educational opportunity, as well as emotional distress, such as humiliation, depression, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and otherwise failure to provide access to its programs and services.

58.     Plaintiff seeks damages and attorneys' fees as a result.

**SECOND CLAIM**

**SECTION 504 OF THE REHABILITATION ACT OF1973, DISCRIMINATION**

**29 U.S.C. § 794(a)**

**Against the District and DOES 1-10**

59.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

60.     Under Section 504, a qualified individual with a disability may not, solely by reason of his/her disability, be subjected to discrimination, excluded from participation in, or denied the benefits of, any program or activity receiving Federal financial assistance.  29 U.S.C. § 794(a).

61.     Under Section 504, the phrase "program or activity" includes a local educational agency.  29 U.S.C. § 794(b) (2) (B).

62.     Under Section 504, public entities are required to provide meaningful access to their programs, services and activities. Among other things, "the aids, benefits and services provided, must afford handicapped persons equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement, in the most integrated setting appropriate to the person's needs." 34 C.F.R. §104.4(b)(2). Further, public entities may not "[p]rovide a qualified handicapped person with an aid, benefit, or service that is not as effective as that provided to others," *Id.* at §104.4(b)(1)(iii) and may not "[d]eny a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." *Id.* at §104.4(b)(1)(i); *see also generally id. at* §104.4.

63.     Under Section 504, public entities are required to provide meaningful access to their programs, services and activities. Specifically, public education providers must ensure that elementary and/or secondary education services are provided in the most integrated setting appropriate. *Id*. at §104.34.

64.     In addition, "in providing or arranging for the provision of nonacademic and extracurricular services and activities, including meals, recess periods, and the services

11

COMPLAINT

and activities set forth in §104.37(a)(2), a recipient shall ensure that handicapped persons participate with nonhandicapped persons in such activities and services to the maximum extent appropriate to the needs of the handicapped person in question." *Id*. at §104.34.

65.    Further, schools are required to provide a Free Appropriate Public Education under Section 504, "regardless of the nature or severity of the person's [disability]." 34 C.F.R. §104.33(a). Districts are required to provide services "designed to meet individual educational needs of [disabled] persons as adequately as the needs of [nondisabled] persons are met. 34 C.F.R. §104.33(b). Schools are required to conduct an evaluation of any student who, because of a disability, needs or is believed to need special education or related services before taking any action with respect to the initial placement of the person in regular or special education and any subsequent significant change in placement. 34 C.F.R. §104.35(a).

66.    Under Section 504, public school districts are required to establish standards and procedures for the evaluation and placement of students who, because of a disability, need or are believed to need special education or related services, which ensure that tests and other evaluation materials, among other things, have been validated for the specific purpose for which they are used; are administered by trained personnel; and include those tailored to assess specific areas of educational need. 34 C.F.R. §104.35(b).

67.    In interpreting evaluation data and *in making placement decisions*, a public school district shall: "(1) draw upon information from a variety of sources, including aptitude and achievement tests, teacher recommendations, physical condition, social or cultural background, and adaptive behavior, (2) establish procedures to ensure that information obtained from all such sources is documented and carefully considered, (3) ensure that the placement decision is made by a group of persons, including persons knowledgeable about the child, the meaning of the evaluation data, and the placement options, and (4) ensure that the placement decision is made in conformity with § 104.34." 34 C.F.R. §104.35(c).

68.    Furthermore, the public education provider must establish procedures for the periodic reevaluation of students who have been provided special education and related services. 34 C.F.R. §104.35(d).

69.    At all times relevant, including at the time of each alleged violation of Section 504, the District received federal financial assistance as a public school.

70.    Since Plaintiff's enrollment within Antelope Valley Union High School District he was a qualified individual with a disability within the meaning of Section 504 or was regarding as having a disability. Plaintiff's sickle cell anemia, asthma, and sleep apnea, substantially limits a variety of major life activities, including but not limited to, talking, learning, concentrating, among others.

71.    Throughout the time of Plaintiff's enrollment, Defendant acted in violation of Section 504 by failing to provide a full and meaningful educational program, including by its failure to evaluate Plaintiff relating to its obligations under Section 504 or provide reasonable accommodations and supports for Plaintiff's disability, and otherwise failing to provide access to its programs and services.

72.    Accordingly, the District has violated Section 504, and Plaintiff thereon alleges that Defendant committed the acts and omissions alleged herein with intent and/or deliberate indifference to Plaintiff's rights.

73.    As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to the District's educational programs, including lost educational opportunity, as well as emotional distress, including humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities.

74.    Plaintiff seeks damages and attorneys' fees as a result.

### THIRD CLAIM

**UNRUH CIVIL RIGHTS ACT**
**Against the District and DOES 1-10**

75.     Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

76.     California's Unruh Civil Rights Act prohibits discrimination against individuals with disabilities and also prohibits discrimination based on a person's disability or perceived disability.

77.     Section 51 of the California Civil Code provides, in relevant part:  "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their…disability…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).

78.     Under the Unruh Act, "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990 (P.L. 101-336) shall also constitute a violation of this section." Civil Code §51(f).

79.     The Unruh Act holds liable anyone who "denies, aids or incites a denial, or makes any discrimination or distinction contrary to" Section 51 of the California Civil Code for "each and every offense."  Cal. Civ. Code § 52.

80.     Defendant is a business establishment for the purposes of the Unruh Act.

81.     Defendant denied, or aided or incited a denial of, or discriminated with respect to, Plaintiff's right by law to the full and equal advantages, accommodations, facilities, privileges and services associated with a public education.

82.     Defendant's discriminating conduct was based on Plaintiff's disability.

83.     Defendant also violated the Unruh Act by its failure to act in accordance with Federal and State laws designed to ensure that minors have free access to public schools and all of its benefits and privileges. The District acted in contravention to the laws that would otherwise have protected Plaintiff from the District's conduct.

84.     The actions of Defendant constitute intentional discrimination against persons with disabilities and violate the Unruh Civil Rights Act, Cal. Civ. Code §§ 51, *et seq*.

85.     Student was unlawfully denied "full and equal accommodations, advantages, facilities, privileges, or services" from Defendant's public educational program.  Defendant thus violated the California Unruh Act with respect to Plaintiff.

86.     As a result of the foregoing, Plaintiff suffered injury, including, but not limited to, denial of meaningful access to the benefits of a public education. As a direct and proximate result of the aforementioned acts, Plaintiff has suffered loss of meaningful access to Defendant's educational programs, including lost educational opportunity, as well as emotional distress, including humiliation, hardship and anxiety, due to Defendant's failure to address accommodations, modifications, services and access required for Plaintiff's disabilities, and its exclusion of Plaintiff.

87.     Plaintiff seeks damages and attorneys' fees as a result.

88.     Pursuant to California Civil Code § 52.1(f), Defendant is liable to Plaintiff in an amount totaling no less than $4,000 for every violation of California Civil Code §51 et seq. or three times of actual damages.

## **FOURTH CLAIM**

### **California Education Code §§ 200, 201, 220 and 262.4**
### **Against the District and DOES 1-10**

89.     Plaintiff incorporates by reference the allegations contained in each of the foregoing graphs and incorporate them herein as if separately alleged.

90.     California Education Code § 200 states in relevant part that "[i]t is the policy of the State of California to afford all persons in public schools, regardless of their disability, . . . equal rights and opportunities in the educational institutions of the state."

91.    California Education Code § 201(a) states in relevant part that "[a]ll pupils have the right to participate fully in the educational process, free from discrimination and harassment."

92.    California Education Code § 220 prohibits, inter alia, discrimination on the basis of disability "in any program or activity conducted by an educational institution that receives, or benefits from, state financial assistance or enrolls pupils who receive state student financial aid."

93.    California Education Code section 262.4 provides that the aforementioned provisions of the Education Code "may be enforced through a civil action."

94.    Plaintiff was and is an individual with a disability within the meaning of the California Education Code § 220 as defined by California Education Code § 210.1.

95.    At all times relevant to this action, Defendant received financial assistance from the State of California.

96.    As a direct and proximate result of Defendant's actions and omissions as described herein, Defendant has violated of California Education Code §§ 200, 201 and 220, by denying Plaintiff the benefits of, and unlawfully subjecting Plaintiff to discrimination under Defendant's services, programs and activities.

97.    As a direct and proximate result of Defendant's conduct, Plaintiff has suffered damages in an amount to be proven at trial.

## FIFTH CLAIM

### NEGLIGENCE

### Against the District and DOES 1-10

98.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

99.    At all relevant times, Defendant owed a duty of due care to Plaintiff.

100.  California Government Code section 820 provides that a public employee is liable for injury caused by his act or omission to the same extent as a private person.

101.  California Government Code section 815.2 provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his or her employment.

102.  Defendant breached its duty of due care to Plaintiffs by failing to ensure that Plaintiff received necessary accommodations, supports and services in full and without incident.

103.  Defendant, a public entity, was at all relevant times the employer of the school personnel at issue who failed to ensure Plaintiff was provided accommodations and supports while at school. These employees committed the acts described herein while acting within the scope of their employment with the District of educating, disciplining, and/or supervising Plaintiff.

104.  Therefore, pursuant to Govt. Code section 815.2, Defendant is vicariously liable for the actions of its employees acting within the scope of their employment.

105.  Defendant's breach of duty proximately caused and was a substantial factor in causing harm to Plaintiffs, including substantial emotional distress. Such damages were reasonably foreseeable to Defendant.

106.  By virtue of Defendant's acts and omissions as alleged herein, Plaintiffs are entitled to an award of compensatory damages in an amount according to proof.

## SIXTH CLAIM

### NEGLIGENT SUPERVISION

### Against the District and DOES 1-10

107.   Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs.

108.  At all relevant times, Defendant owed a duty of due care to Plaintiffs to properly train and supervise all contractors, employees, and agents involved in Plaintiff's education. Part of Defendant's duty consists of ensuring that persons such as Plaintiff, who are entitled to accommodations, supports and services, receive those

accommodations, supports and services in full and without incident, including retaliation for advocacy.

109.   Defendant breached its duty of due care to Plaintiff by failing to properly train and supervise their contractors, employees, and agents responsible for Plaintiff's education and interactions.

110.   Defendant's breach of duty proximately caused and was a substantial factor in causing substantial emotional distress. Such damages were reasonably foreseeable to Defendants.

111.   By virtue of Defendant's acts and omissions as alleged herein, Plaintiff is entitled to an award of compensatory damages, in an amount according to proof.

**WHEREFORE, Plaintiff prays for relief as follows:**

**PRAYER FOR RELIEF**

1. For a Declaration that Defendant's conduct relating to Plaintiff between August 2019 and January 2021 violated the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA"); Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 *et seq.* ("Section 504"); and the Unruh Civil Rights Act, Cal. Civ. Code § 51 *et seq.*, Cal. Educ. Code § 200, Cal. Educ. Code § 201, Cal. Educ. Code § 220.

2. For a Declaration that the Defendant's policies, practices, or procedures concerning the failure to provide accommodations for students with disabilities denied Plaintiff's right to full and equal access to, and use and enjoyment of, the facilities, programs, services, and activities of Defendant as required by law;

3. Damages in an amount to be determined by proof, including but not limited to damages under 42 U.S.C. 12133, 29 U.S.C. §794(a), Cal. Civil Code §52, Cal. Educ. Code § 200, Cal. Educ. Code § 201, Cal. Educ. Code § 220, Cal. Educ. Code § 262.4 and tort theories, including all applicable statutory damages;

4. Any other such damages as may be allowed under all the above federal and state laws;

5. Plaintiffs' reasonable attorneys' fees and costs in this action, including, but not limited to, 42 U.S.C. §12205, 29 U.S.C. §794(b), Cal. Civil Code §52 and Cal. Code Civ. Proc. 1021.5.

6. Such other and further relief as the Court deems just and proper.

Dated:   August 6, 2021

RIVERS LAW, INC., APC
VANAMAN GERMAN LLP

By: _____
SURISA RIVERS
CAROLEEN TOROSSIAN
*Attorneys for Plaintiff*

19
COMPLAINT

1

## **<u>DEMAND FOR JURY TRIAL</u>**

2
      Plaintiff hereby demands a jury trial.

3

4
Dated:   August 6, 2021

5

6

7

8

9

                         RIVERS LAW, INC., APC
                         VANAMAN GERMAN LLP

By: _____
        SURISA RIVERS
        CAROLEEN TOROSSIAN
        *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT